**2025-_____**

---

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

In re UNITED STATES,

*Petitioner.*

---

Appeal from the United States Court of International Trade in
No. 1:21-cv-00219-SAV, Judge Stephen A. Vaden

---

# PETITION FOR A WRIT OF MANDAMUS
# TO THE UNITED STATES COURT OF INTERNATIONAL TRADE

ANDREA C. CASSON
Assistant General Counsel for
Litigation
Telephone (202) 205-3105

COURTNEY S. McNAMARA
ELIZABETH SPECK
Attorney-Advisors
Office of the General Counsel
U.S. International Trade Commission
500 E Street SW
Washington, DC 20436
Telephone (202) 205-3095

Dated:  April 4, 2025

## INTRODUCTION AND SUMMARY

Pursuant to 28 U.S.C. § 1651 and Rule 21 of the Federal Rules of Appellate Procedure, the United States International Trade Commission ("Commission" or "ITC") respectfully requests that this Court enter a writ of mandamus ordering the United States Court of International Trade ("CIT" or "court") in *OCP S.A. v. United States*, Consol. Ct. No. 21-00219 (Ct. Int'l Trade), to retain the Commission's designation of information as business proprietary information ("BPI") unless the submitting party has consented to its disclosure.  In addition, we request that the Court vacate the CIT's opinion and order dated March 27, 2025 ("March Order"), Appx1-47, in which the CIT, based on a misinterpretation of the law in the Commission's view, ordered the Commission to disregard its designation of certain company-specific business information as business proprietary, which in the Commission's view requires the Commission to act in contravention of its statutory obligations to protect the integrity of business proprietary information provided to it under a promise of confidentiality.  Appx47-48.

Pertinently, actions taken by the same judge in disclosing BPI in another case form the basis of another ripe appeal currently before this Court in *In re United States*, Fed. Cir. No. 24-1566.  That appeal has been exhaustively briefed by the Commission and two *amici* associations of attorneys who practice before the

Commission. Specifically, the Commission filed its principal brief in the *CVB* appeal in September 2024. Its position was fully supported by a brief filed by the Customs and International Trade Bar Association ("CITBA") and the International Trade Commission Trial Lawyers Association ("ITCTLA") as *amicus curiae*. Collectively, the CVB appellate briefing reflects the unified position of the Commission and the broad swaths of the private bar that appear before the Commission that the CIT's release of BPI was contrary to law. The Commission and the practitioners also agree that the release of such information without the submitter's consent presents significant harm to the submitter of the information and interferes with the Commission's ability to perform its statutory duties.

The instant suit arises from the Commission's determination pursuant to the Tariff Act of 1930 ("the Act") that an industry in the United States was materially injured by reason of imports of phosphate fertilizers from Morocco and Russia, that were found by the United States Department of Commerce ("Commerce") to be subsidized by the governments of Morocco and Russia. In *OCP S.A. v. United States*, 658 F. Supp. 3d 1297 (Ct. Int'l Trade 2023) ("*OCP I*"), the CIT concluded that the Commission's affirmative injury determination was unsupported by substantial evidence and remanded the case for further proceedings. After the Commission issued its remand results, the CIT ordered a hearing regarding redactions in the Commission's public administrative record and remand results.

Specifically, the CIT ordered the Commission to explain why it had not followed the guidance set forth in *CVB II,* which, as explained above, is now the subject of an appeal challenging the CIT's *sua sponte* release of BPI.

In accordance with the CIT's request, during the evidentiary hearing in *OCP* (the case underlying this petition) and in supplemental briefing, the Commission, as well as defendant-intervenors, explained that the Commission had properly acted within its statutory and regulatory authority when it redacted confidential BPI material in its remand results and in the public administrative record.[1]  The Commission and defendant-intervenors also explained that the CIT's interpretation could not be squared with Congress's carefully crafted, comprehensive statutory scheme.  Specifically, the parties explained that the statute empowers the Commission to gather the necessary information to perform its statutory directives within a tight statutory framework, which can be as short as 45 days in a preliminary proceeding.  The parties also emphasized that the statute provides robust protection of any such BPI information received, which is to be preserved in any subsequent court proceedings.  Finally, the parties maintained that, because the statute specifically restricts the disclosure of BPI, it also pre-empts the

---

[1]  Although the CIT provided plaintiffs an opportunity to respond to the Commission's and defendant-intervenor's briefs addressing the BPI issues, plaintiffs and plaintiff-intervenors took no position.

presumption of public access to information in any Commission or subsequent judicial proceedings.

The CIT, however, again rejected the Commission's claims that BPI treated as such by the Commission in its proceedings should be so preserved, absent the consent of the submitter to its public release. In doing so, the CIT erroneously found that the parties had failed to justify why BPI status should be preserved. For example, the court relied on extra-record, public information that it obtained through its own research, which in the Commission's view, does not alter the propriety of the designation of such BPI. The court signaled that it would imminently issue an opinion that publicly released information that it did not believe was properly designated as confidential, just as it had done in the *CVB* litigation. *See, e.g.*, Appx37-38; Appx39-41; Appx43; Appx45-46. *See also* Paperless Order issued Jan. 10, 2025 in *OCP S.A. v. United States*, Consol. Ct. No. 21-00219 (ECF 218).[2] The court also ordered the Commission to no longer preserve the confidential status of information that it had treated as BPI in the underlying proceedings, which in the Commission's view conflicts with the

---

[2] The paperless order of January 10 states that: "The Court is diligently working on two opinions - one on the confidentiality issue and one on the merits of the Remand Determination. The Court intends to issue both opinions simultaneously, which will promote efficiency and the full discussion of all legal issues in play."

statutory provisions limiting the Commission's ability to withdraw such protection. Appx48.

In the *CVB* appeal, the Commission challenges the CIT's *sua sponte* release–over the objection of all parties to that litigation–of BPI information in a decision reviewing a Commission determination in *CVB, Inc. v. United States*, Consol. Ct. No. 21-00288 (Ct. Int'l Trade).[3]  In *CVB*, the Commission's only opportunity to object to the improper release of the information was after the CIT had already disclosed the information.  By contrast, the instant petition provides an opportunity to prevent the disclosure of BPI *ab initio*.  In filing this petition, the Commission seeks to forestall what it believes to be the improper release of BPI before the CIT issues its merits opinion and before this Court can address the issues raised in the *CVB* appeal.

If, as it did in *CVB*, the CIT issues an opinion that *sua sponte* publicly releases confidential information, the resulting harm to the owners of the information will already have occurred and cannot be corrected.  Because the court has dictated that the Commission cannot treat information as BPI in further

---

[3] Initially, the appellate litigation in *CVB* involved cross-appeals.  CVB Inc., appealed the merits of the decision in, *CVB, Inc. v. United States*, 675 F. Supp. 3d 1324 (Ct. Int'l Trade 2023) ("*CVB I*"), and the Commission appealed the CIT's denial of the parties' joint motion to redact *CVB I* in *CVB, Inc. v. United States*, 681 F. Supp. 3d 1313 (Ct. Int'l Trade 2024) ("*CVB II*") because it disclosed BPI. *See CVB, Inc. v. United States*, Nos. 24-1504, 24-1566.  CVB subsequently dismissed its appeal.

proceedings in this case, it suggests that the protected status of BPI that has already been collected in this proceeding will not be preserved and calls into question the BPI status of information that may be collected going forward. This directly affects the Commission's ability to gather candid and complete information. For example, if the court orders a remand parties may be less forthcoming when responding to any subsequent questionnaires for fear that it will not be treated as BPI.

More generally, the release of BPI in this case would also harm the integrity of the Commission's performance of its statutory duties. Because the Commission's investigations involve obtaining, vetting, and analyzing large quantities of sensitive company specific information for entire industries under tight statutory deadlines, the Commission necessarily depends upon the willingness of parties to cooperate and to provide BPI information. Consequently, the CIT's rulings create uncertainty with respect to the Commission's ability to safeguard proprietary information, which in turn will have a chilling effect on this cooperation. Thus, given the likelihood that the CIT imminently will issue its merits decision and release BPI therein, immediate intervention by this Court is required.

# STATEMENT

## A. Background

The Commission's responsibility in an antidumping or countervailing duty investigation is to determine if a domestic industry is materially injured or threatened with material injury because of subject, or foreign, imports. 19 U.S.C. §§ 1671d(b)(1), 1673d(b)(1). To carry out this function, Congress granted the Commission broad authority to gather all information necessary for it to perform its statutory functions and duties, including BPI. *See* 19 U.S.C. § 1333.[4] During an injury investigation, the Commission obtains critical information from market participants (domestic and foreign producers, foreign exporters, U.S. importers, and U.S. purchasers), many of whom are not parties to the Commission's administrative proceeding and who are not represented by counsel. S. Rep. 100-71 at 112 (June 12, 1987). As part of this process, companies are asked to provide proprietary or other sensitive information, primarily in the form of responses to Commission-issued questionnaires as well as via site visits and verifications.

---

[4] While the Commission may of course in the future adjust its procedures for designation and de-designation of BPI, it strongly opposes here the public release of information submitted as BPI that submitters were assured would retain that designation, and who had every expectation of such treatment. To the extent that the Commission adjusts its BPI procedures, any such change in procedures would apply prospectively so that any submitter of any information for which the Commission may find does not qualify for BPI designation would have an opportunity to withdraw such information before the record closes, in accordance with the statute.

Congress recognized that "the best insurance that the ITC will be able to obtain the information that it needs for its investigations is its reputation for strictly maintaining the confidentiality of information submitted to it." *Id.* at 114. And Congress allowed for the possibility of "strong sanctions" to protect the Commission's reputation. *Id.*

Congress's robust statutory scheme, as set forth at 19 U.S.C. § 1677f, contains several key provisions that provide for the confidential treatment of business proprietary information. Under this carefully crafted statutory scheme, the "default rule" is to err on the side of treating company-specific information as confidential. In section 1677f(b)(1)(A), Congress directed that confidential BPI "shall not be disclosed" unless it can be done so in a manner that does not reveal the individual operations of a firm or it is released under an administrative protective order (APO), or the Commission received the submitter's consent. In addition to the Commission's broad authority under 19 U.S.C. § 1333 to gather information, including BPI, parties have the opportunity to submit information designated as proprietary under this framework. 19 U.S.C. § 1677f(b)(1)(B). Given the short timeframe that the Commission has to complete its work, particularly the 45-day deadline for completing preliminary determinations, nothing in the statute requires the Commission to scrutinize the record to ensure that parties have properly marked their information as BPI. But, if the

Commission determines that a BPI designation is unwarranted, section 1677f(b)(2) requires the Commission to return the information to the submitter rather than publicly disclosing it in the record of those proceedings.[5]  The statute also does not provide for the public disclosure of BPI based on the passage of time.

Importantly, Congress balanced its robust protections of business proprietary information with the due process rights of parties appearing before the Commission by allowing for the limited disclosure of proprietary information under a protective order and requiring the Commission to promulgate regulations establishing appropriate sanctions if the Commission's protective order is violated. 19 U.S.C. §§ 1677f(c)(1)(A)-(B); *see also* S. Rep. 100-71 at 113 (explaining that protective information should be available only if "the ITC is satisfied that adequate sanctions for the disclosure are available against the proposed recipient of the information").  Commission Rule 207.7 implements that directive by informing

_____

[5] Congress specifically provided for a mechanism that enables submitters to have their information returned if the Commission is unpersuaded that proprietary treatment is warranted prior to disclosure during the pendency of Commission proceedings.  Specifically, 19 U.S.C. § 1677f(b)(2) provides that if the Commission determines that the designation of any information as proprietary is unwarranted, it must notify the person who submitted it and ask for an explanation of the reasons for the designation.  If the submitter fails to persuade the Commission that the designation is warranted, or withdraws the designation, the Commission must return the information in question to the party submitting it. *Id.* Once the record is closed, however, the Commission can no longer satisfy this requirement of returning such information prior to withdrawing any BPI designation.

persons who receive information under a Commission administrative protective order of the potential sanctions for improperly disclosing information subject to a Commission protective order, which include, for example, disbarment from practice before the Commission, referral to the appropriate United States Attorney, referral to the ethics panel of a bar or other professional organization, or such other actions that the Commission deems appropriate, such as the issuance of a warning letter. 19 C.F.R. § 207.7(d).[6]

Once the Commission closes the record in a proceeding, and the Commission can no longer satisfy the requirements of section 1677f(b)(2) to return any BPI that is not entitled to be designated as such, 19 U.S.C. § 1516a(b)(2)(B), unambiguously states that "{t}he confidential or privileged status accorded to any documents, comments or information *shall be preserved* in any action {before the Court of International Trade} under this section." *Id.* (emphasis added). At the same time, the statute permits the court to "disclose such material under such terms and conditions as it may order." *Id.* Congress has explained that those "terms and conditions" are those contained in a protective order. S. Rep. No. 96-249 at 248 (1979). In other words, public disclosure is impermissible without the submitter's consent.

---

[6] Commission employees are also required to protect confidential information obtained during a Commission investigation, and are subject to criminal penalties if there is an unauthorized disclosure. 18 U.S.C. § 1905.

Although the Commission places significant importance on preserving the confidentiality of material that is submitted during its investigations, it also develops a comprehensive public record. Among other things, the Commission conducts hearings that are open to the public, and conducts independent research from public sources, separate from the BPI obtained from market participants, from which it cites in public versions of its staff reports and opinions. Most importantly, the Commission drafts its opinions so that the public may understand its rationale for issuing a particular decision even through the opinion contains redactions of detailed BPI.

**B.      Proceedings Before the Trial Court and Related Litigation**

As summarized above, on September 23, 2023, the CIT issued a determination finding that the Commission's affirmative determination in *Phosphate Fertilizers from Morocco and Russia*, Inv. Nos. 701-TA-650-651 (Final), USCIT Pub. 5172 (Mar. 2021), was unsupported by substantial evidence and remanded the matter for further proceedings. Appx3-4 (citing *OCP I*, 658 F. Supp. 3d at 1297). After the CIT issued *OCP I*, but before the Commission filed its remand results, the court decided *CVB I* in which it publicly disclosed information that the Commission and the parties had treated as BPI. Appx4. Although all parties in *CVB* jointly requested that the CIT retract its opinion because it publicly disclosed confidential information, and asked the CIT to reissue

the opinion with the BPI status of the disclosed information preserved, the court denied the motion and found, erroneously in the Commission's view, that, among other things, the Commission's redactions did not concern business proprietary information because "substantially identical information was publicly available." Appx4-5.

The Commission subsequently appealed the court's *sua sponte* release of information that had been treated as confidential before the Commission and the court's subsequent opinion denying the parties' motion to retract BPI in *CVB II*. The Commission's principal brief was filed in September 2024. Confidential Response Brief, *CVB, Inc. v. United States*, No. 24-1504, ECF No. 34 (Sept. 30, 2024); Corrected Opening Brief, *In re United States*, No. 24-1566, ECF No. 9 (Dec. 2, 2024) ("Commission CVB Br."). Shortly thereafter, *amicus* briefs were filed by the CITBA and the ITCTLA. No. 24-1504, ECF Nos. 40 (Oct 7, 2024) ("CITBA Br."); No. 24-1504, ECF No. 45 (Oct. 8, 2024) ("ITCTLA Br.").

Both the Commission's and the *amici* trade bar associations' briefing explain in detail why the CIT's release of BPI in the *CVB* litigation is at odds with the relevant statutory and regulatory scheme and recount the legislative history underscoring Congress's intent that the Commission preserve confidential information. *See* Commission CVB Br. at 22-35; CITBA Br. at 6-30; ITCTLA Br. at 3-11. Further, the Commission's brief addresses why the CIT erred in

concluding that (1) the common law right of access to judicial records warranted the release of confidential information, and (2) the ITC had improperly bracketed information that the Court concluded was publicly available. Commission CVB Br. at 35-46.

On February 20, 2025, the Court granted Andrew Dhuey's motion to appear as *amicus curiae* in support of the CIT's decision in *CVB*. Order, *In re United States*, No. 24-1566, ECF No. 29 (Feb. 20, 2025). Mr. Dhuey's deadline for filing his brief has been stayed while this Court considers whether to grant his motion to access BPI information, which the Commission has opposed. Order, *In re United States*, No. 24-1566 (Mar. 18, 2025).

**C.    The CIT's March Order**

After the court issued its decision in *CVB II*, the Commission filed with the CIT its remand results in *OCP*. *Phosphate Fertilizers from Morocco and Russia*, Inv. Nos. 701-TA-650-651 (Remand), USITC Pub. 5490 (Jan. 2024). Based apparently on how one trade publication characterized the Commission's redactions in its remand results, the CIT ordered an evidentiary hearing to further discuss redactions in the Commission's opinion. Appx5-6. In March 2025, the court issued its order in which it held that the Commission's redactions "violate{} the law and the Commission's regulations by treating publicly available information as confidential." Appx19.

First, the CIT held that neither 19 U.S.C. § 1677f(a)(4)(B) nor 19 C.F.R. § 201.6(b) permit the Commission to presumptively treat company-specific questionnaire responses as confidential. Appx25-27. In doing so, the court second-guessed the Commission's assertion that parties and non-parties would decline to cooperate if the Commission could not protect the confidential treatment of a submitter's information. Appx27. Next, although 19 U.S.C. § 1516a(b)(2)(B) requires that the confidential status of BPI be preserved in subsequent proceedings, the court found that the statutory provision that provides that the court "may disclose such material under such terms and conditions as it may order" permitted the court to disclose such confidential and proprietary information without any such terms and conditions. In the court's view, these findings were consistent with the common law understanding that courts possess the discretion to manage their own dockets and Federal Circuit procedures. Appx28-33 (discussing § 1516a(b)(2)(B)).

Finally, the CIT addressed some of the specific information that had been identified as BPI in an exhibit that was appended to a prior order. Appx34. The court concluded that much of the information was not entitled to continued confidential treatment because it was either: (1) publicly available information; (2) a "general characterization{}," of information; or (3) "stale" information, in that it no longer posed a "specific, concrete competitive harm." Appx34-46. The court

then ordered the Commission to "{t}reat as public" the information addressed in section IV, or Appx34-47, and to "abide by the statutes and regulations governing confidential treatment of information" in all future filings with the court. Appx48. The court did not address the merits of the Commission's remand results, and, consistent with the court's actions in *CVB*, the Commission anticipates that the court will imminently issue a decision that publicly releases BPI.

## ARGUMENT

A party petitioning for a writ of mandamus bears the burden of proving: (1) that it has no other means of obtaining the relief desired; and (2) that the right to issuance of the writ is "clear and indisputable." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008). The Court issuing the writ must also be satisfied that issuing such a writ is appropriate under the circumstances. *Cheney v. U.S. District Court for the District of Columbia,* 542 U.S. 367, 382 (2004).

Mandamus relief is warranted in this case because the CIT made clear in its March Order that it will imminently release information that the Commission treated as BPI, without the submitter's consent. If the CIT releases such information, much of the damage from the wrongful release of information cannot be undone on appeal. In *CVB*, the Commission could only appeal the CIT's decision after the CIT had already abused its discretion by releasing BPI. As the Commission and the trade bar associations made clear in their briefing in *CVB*, and

as explained herein, the parties are entitled to relief because the CIT's conclusion that it can *sua sponte* release BPI fundamentally misconstrues Congress's statutory scheme and would be contrary to the statute. If it grants the mandamus petition in this case, this Court can prevent further potentially harmful disclosure while it turns its consideration to the *CVB* appeal.

## I.     Mandamus Is Appropriate to Prevent the Release of Confidential Information Because Such Release Cannot be Rectified on Appeal

Although the nature of mandamus relief is extraordinary, the Supreme Court has held, in the context of discovery, that "in extraordinary circumstances where a disclosure order works a manifest injustice, a party may petition the court of appeals for a writ of mandamus." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 101 (2009). This Court has also issued a writ in appropriate cases to prevent the wrongful exposure of privileged or confidential communications in similar situations. *See In re United States*, 678 Fed. App'x. 981 (2017); *In re United States*, 669 F.3d 1333 (Fed. Cir. 2012). *In re The Regents of the University of California*, 964 F.2d 1128, 1136 (Fed. Cir. 1992).

For example, in *In re United States*, the Court of Federal Claims had compelled discovery of tax return information of third parties. 669 F.3d at 1334. The government filed a petition for a writ of mandamus, asking this Court to determine "whether that discovery c{ould} be sustained in light of the Internal Revenue Code's general prohibition against disclosure of tax 'return information.'"

*Id.* (citing I.R.C. § 6103(a), 26 U.S.C. § 6103(a)). This Court granted the writ, holding that,

> The tax law requires millions of individuals and business entities to furnish the IRS with highly confidential information. This information, as well as the documents that are created by the IRS in connection with it, is indispensable to the administration of the revenue laws. Recognizing that the effective operation of our tax system hinges on the willingness of taxpayers to provide such information, Congress has taken steps to guarantee that confidentiality. Section 6103(a) of the Code prohibits the IRS from disclosing tax "returns" and tax "return information" except in specifically enumerated circumstances, a prohibition which is enforced by civil and criminal penalties.

*Id.* at 1336-37.

The Court's reasoning in *In re United States* applies with equal force here. 669 F.3d at 1336-37. Like the confidential tax information that this Court found to be integral to the IRS's performance of its duties in *In re United States*, the Commission's ability to conduct its investigations within tight statutory deadlines "hinges on the willingness" of industry participants to supply confidential information. *Id.* Indeed, when adopting the provisions governing confidentiality set forth in 19 U.S.C. § 1677f, Congress explicitly recognized "the {Commission}'s legitimate concern that the availability of domestic firms' closely guarded financial information may have a 'chilling effect' on the willingness of some firms to supply information voluntarily." S . Rep. No. 100-71 at 113-14.

Similarly, in *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1483 (Fed. Cir. 1986), this Court recognized that obtaining sensitive company-specific data through questionnaires is an integral part of the Commission's investigative process. Specifically, the Court explained that "{d}isclosure of sensitive materials to an adversary would undoubtedly have a chilling effect on the parties' willingness to provide the confidential information essential to the Commission's factfinding processes." *Id.* at 1483. Thus, the Court endorsed the Commission's "conservative position on the side of optimum shielding of business information." *See also Hyundai Pipe Co., Ltd. v. U.S. Dep't of Commerce,* 11 CIT 238, 243 (1987) (recognizing the irreparable harm that could result from the inadvertent or advertent use of confidential information, stating that "caution must be, and is, the guidepost in dealing both with sensitive information and the sensitivities of those who obtain access to it"); *Kemira Fibres Oy v. United States*, 858 F. Supp. 229, 234 (Ct. Int'l Trade 1994) (finding that the balance between Commerce's investigatory needs and the need for confidentiality is achieved through information safeguards set forth in 19 U.S.C. § 1677f).

Firms are also entitled to rely on the reasonable expectation of consistent proprietary treatment of such information, which is undermined by the CIT's *sua sponte* release. *See Qwest Commc's Int'l, Inc. v. FCC*, 229 F.3d 1172, 1184 (D.C. Cir. 2000) (in submitting certain data, the company "was entitled to rely on the

{FCC}'s announced policy and precedent on how it would handle confidential audit information" and "similarly entitled to assurances that the unprecedented disclosures would be consistent with the standards that the {FCC} has set for itself").

Here, the CIT's March Order and its opinion regarding the release of BPI in the *CVB* litigation undermine Congress's carefully structured statutory scheme ensuring the broad protection of submitters' confidential and proprietary information, which is critical to the Commission's performance of its statutory functions. The court's release of such information creates uncertainty as to the Commission's ability to protect sensitive, confidential information, and damages its reputation doing so, which Congress has recognized is its "best insurance" to obtain the information that it needs. *See, e.g.*, S. Rep. 100-71 at 114.

More importantly, because the CIT's March Order will govern future proceedings in this case, any unauthorized release of BPI will only be compounded going forward. In its March Order, the CIT held that the Commission cannot treat certain information as BPI and must follow the March Order's instructions "in filings of any kind with the Court." Appx48. The existing administrative record and remand record were prepared based on the Commission's and the submitters' understanding that BPI would be protected. But the CIT's March Order upends the parties' understanding. It also calls into question how the Commission can refer to

the existing record in any subsequent decision, motions practice, or appeal. In addition, if, for example, the Commission issues additional questionnaires in any remand proceeding, it will also have a chilling effect on the parties' willingness to be candid in their responses, for fear of disclosure of sensitive, company-specific information.

Consequently, the release (or threatened release) of such information without consent will cause real and substantial harm both in this case and generally to the submitters of the information and to the Commission's ongoing work.

## II. The Commission Appealed *CVB* Because the Trial Court's Reasoning that It Can Release BPI Contains Several Clear Errors That Will be Repeated in this Case if the Court Does Not Issue a Writ of Mandamus

As the March Order in this case demonstrates, the CIT based its conclusion that the Commission had erred in its treatment of BPI information on the assertion that it failed to follow the court's guidance in *CVB*. Appx5; Appx49-55. The Commission (with the CITBA and the ITCTLA as *amici*) have appealed that decision releasing BPI and submitted detailed briefs to this Court explaining why the reasoning contained several clear errors. Among those errors, which the court repeats in this case, are: (1) the CIT's incorrect conclusion that 19 U.S.C. § 1516a(b)(2)(B) permits the court to reveal protected information without the submitter's consent and that statute's protection of BPI is outweighed by the public interest in access to judicial proceedings, and (2) the CIT's mistaken conclusions

21

that that the Commission cannot preemptively designate company-specific

questionnaire responses as BPI and that by affording such confidential status to

questionnaire responses the Commission seeks to shield otherwise publicly

available information.[7]  Given these errors, the CIT's reliance on its misguided

*CVB II* decision to challenge the Commission's designation of BPI in the *OCP*

litigation was likewise wrong and harmful.

Although there are underlying distinctions in the nature of the BPI

disclosed—or threatened to be disclosed in *CVB* as compared to *OCP*—there are

similarities in some of the essential underlying legal issues, in both cases raising

the specter of irreparable harm to the Commission and the parties to the

proceedings.  Accordingly, we respectfully request that the Court prevent the

possibility of further harm in this case by ordering the CIT to maintain the *status

quo* pertaining to the Commission's designation of BPI by issuing a writ of

---

[7] The data that the Commission collects in questionnaires is almost always
uniquely proprietary in that it is collecting precise and granular information,
including financial data, spanning several years that is specific to the company's
operations regarding the precise domestic product that the Commission is
investigating.  As such, although broader data may be more generally publicly
disclosed, the data that the Commission collects would provide competitors with
the directly comparable confidential information about each other's operations
over several years.  Moreover, as discussed above, pursuant to the statutory
provision that requires the Commission to return BPI before removing any such
designation, once questionnaire responses are designated as BPI, the Commission
cannot change that status in the course of preparing its views, which occurs in the
weeks following the record closing and vote.

mandamus prohibiting the CIT both from disclosing BPI and from requiring the Commission to contravene its statutory obligation to maintain the confidentiality of information submitted to it during the phosphate fertilizers investigation.

## CONCLUSION

For the foregoing reasons, the Court should issue a writ of mandamus directing the trial court to retain, and allow the Commission to retain, the Commission's designation of information as BPI in this case unless the submitting party consented to its disclosure.

Respectfully Submitted,

*/s/ Courtney S. McNamara*
Andrea C. Casson
Courtney S. McNamara
Elizabeth Speck
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3095
Andrea.Casson@usitc.gov
Courtney.Mcnamara@usitc.gov
Elizabeth.Speck@usitc.gov

*Counsel for Petitioner*

Dated: April 4, 2025

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENTS

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Federal Circuit Rule 32(b)(3), I hereby certify that the attached Petition complies with the type-volume limitation and typeface requirements of Federal Rule of Appellate Procedure 32(a)(7) and Federal Circuit Rules 32(b)(1) and 32(b)(2). The Petition has been prepared in a proportionally-spaced typeface using Microsoft Office 365, in Times New Roman 14-point font. The brief contains a total of 5,043 words obtained from the word-count function of the word-processing system, including all footnotes and annotations.

*/s/ Courtney S. McNamara*
Courtney S. McNamara
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3095
courtney.mcnamara@usitc.gov

*Counsel for Petitioner*

Dated: April 4, 2025

# CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2025, pursuant to Fed. R. App. P. 21 and 25,

I caused true and correct copies of the foregoing **PETITION FOR A WRIT**

**MANDAMUS TO THE UNITED STATES COURT OF INTERNATIONAL**

**TRADE** to be served upon the following parties via counsel by electronic mail to

the following e-mail addresses, with written consent:

*Counsel for Plaintiff OCP S.A.*
COVINGTON & BURLING LLP
Shara Louis Aranoff
(saranoff@cov.com)
James McCall Smith
(jmsmith@cov.com)
John Joseph Catalfamo
(jcatalfamo@cov.com)
Julia H. Shults (jshults@cov.com)
Paula M. Ortiz Cardona
(portizcardona@cov.com)
Sooan (Vivian) Choi
(vchoi@cov.com)


*Counsel for Consolidated Plaintiff
and Plaintiff-Intervenor EuroChem
North America Corp.*
Jeremy William Dutra
(jeremy.dutra@squirepb.com)
Peter J. Koenig
(peter.koenig@squirepb.com)
SQUIRE PATTON BOGGS (US)
LLP

*Counsel for Plaintiff-Intervenor Koch
Fertilizer, LLC*
ALSTON & BIRD, LLP
Kenneth George Weigel
(ken.weigel@alston.com)
Chunlian Yang
(lian.yang@alston.com)

*Counsel for Plaintiff-Intervenor
International Raw Materials Ltd.*
KELLEY DRYE & WARREN, LLP
Melissa Marie Brewer
(mbrewer@kelleydrye.com)
Paul Charles Rosenthal
(prosenthal@kelleydrye.com)


*Counsel for Defendant-Intervenor
J.R. Simplot Company*
KING & SPALDING, LLP
Stephen P. Vaughn
(svaughn@kslaw.com)
Neal Joseph Reynolds
(nreynolds@kslaw.com)
Patrick James McLain
(PMcLain@kslaw.com)

*Counsel for Plaintiff-Intervenor PhosAgro PJSC*
HOGAN LOVELLS US LLP
Harold Deen Kaplan
(deen.kaplan@hoganlovells.com)
Jared Rankin Wessel
(jared.wessel@hoganlovells.com)
Jonathan Thomas Stoel
(jonathan.stoel@hoganlovells.com)
Maria Alejandra Arboleda Gonzalez
(maria.arboleda@hoganlovells.com)
Michael Grant Jacobson
(michael.jacobson@hoganlovells.com)
Nicolas R. Sparks
(nicolas.sparks@hoganlovells.com)

*Counsel for Defendant-Intervenor The Mosaic Company*
WILMER, CUTLER, PICKERING, HALE & DORR, LLP
Stephanie Ellen Hartmann
(stephanie.hartmann@wilmerhale.com)
Alexandra S. Maurer
(alex.maurer@wilmerhale.com)
David J. Ross
(david.ross@wilmerhale.com)

*Counsel for Amici Agricultural Retailers Association, National Corn Growers Association, National Sorgham Producers, and American Soybean Association*
TRADEWINS LLC
John Robert Magnus
(jmagnus@tradewinsllc.net)

*/s/ Courtney S. McNamara*
Courtney S. McNamara
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3095
courtney.mcnamara@usitc.gov

**CERTIFICATE OF COMPLIANCE WITH RULE 21
REQUIREMENT TO PROVIDE NOTICE TO TRIAL JUDGE**

I hereby certify that on April 4, 2025, pursuant to Federal Circuit Rule 21, I

caused a true and correct electronic copy of the foregoing **PETITION FOR A**

**WRIT OF MANDAMUS TO THE UNITED STATES COURT OF**

**INTERNATIONAL TRADE** to be provided to United States Court of

International Trade Judge Steven A. Vaden, by electronic mail, as follows:

Jason Chien
Case Manager
United States Court of International Trade
Phone: (212) 264-2063
Email: Jason_chien@cit.uscourts.gov

*/s/ Courtney S. McNamara*
Courtney S. McNamara
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3095
courtney.mcnamara@usitc.gov